Good morning, Your Honor. May it please the Court, Mark Primo on behalf of Appellant Plaintiff. In this case, the plaintiffs moved for class certification, which was denied, and that decision should be reversed because... Counsel, is there any reason we wouldn't want to hold this until the Supreme Court acts in Dukes v. Wal-Mart? They've granted cert in it. It's the big class action of the decade, I suppose. And they're probably going to educate us about class actions. Your Honor, there certainly is an argument to delay. I know that another case that actually I'm involved with, the decision is being delayed until Dukes comes out, Mazza v. Konya Motor. The argument, I think, not to delay would be that Dukes has to do with injunctive relief, and although they're looking at the commonality standard, that wasn't an issue here. The trial court's decision did not turn on commonality at all, so that would be the reason to proceed. That's a good point. Let me ask you about some of the other standards. There were two that bothered me in this case, 23A3 and 23A4. 23A4 is typicality. 23A4 actually bothers me a little more in this case. The representative parties will fairly and adequately protect the interests of the class. My concern was that this fellow, Aberdeen, is a poor representative of the class. One thing about him that's noteworthy, I suppose, is that he's not an ordinary consumer. Another thing that's noteworthy, really noteworthy to my mind, is he has a really good chance of losing the case just because he never even checked his mileage. The way you check mileage, as everybody knows, the old-fashioned way, is you run your gas tank almost to the bottom, you fill it up completely, you drive and you take note of your mileage, you drive until it's almost empty, you fill it up, you see how many miles you've gone and how many gallons you've put in, and you divide. The other way to do it is you look at the electronic mileage checker on your dashboard, you zero it out, and you run almost at the full tank of gas, and you see what your mileage has been. He didn't do either one. He just estimated. He said, well, it seems like I'm getting, I can't remember what he said, 350 miles per tank or something like that, and it's not enough. He never even checked his mileage. He never read any of the ads that he claims are deceitful. So whatever kind of deceit Toyota did, it did to a whole bunch of other people and not him. Now, the big concern that that creates, and I suspect the reason why subsection 4 is in 23A, is it would be a great deal for Toyota to buy him off, give him a half million dollars, give his lawyer two million dollars, three million dollars, ten million dollars, and foreclose everybody in the United States from suing Toyota for being deceptive about mileage. Your Honor, let me respond to that. You made a number of points. First of all, they couldn't buy him off and foreclose anyone else, because it wouldn't be race judicata for any other potential clients. If he has class certification, it's race judicata for the whole class. Oh, well, if he has class certification, and then that's a way. That's a great collusive class action by a defendant. Well, Your Honor, and that's why such settlements are brought before the court and evaluated for fairness. Because the court never knows enough. Well, okay, Your Honor. We have cases that say that. Fair enough, and then that could be appealed by an objector and come to a panel such as yourselves, and it could be scrutinized. But going to the issues that are sort of at issue here, that you mentioned, first of all, in terms of his typicality and whether he's a consumer or not, that doesn't affect his claim under the UCL, the unfair competition law in California. That only is an argument with regards to the claim under the consumer. There, his typicality is a real, oh, I see, the UCL. Yeah, the UCL doesn't have a requirement that the person use it for personal, household, or family use. But now in terms of the Consumer Legal Remedies Act, where this is an issue, and the trial court pointed it out, there's a legal question, which is what is the definition of personal use? And we have conflicting authority. In the case of Mazda versus Honda Motor, the court made a finding, a legal finding, that under the CLRA, personal use includes personal business use as an independent contractor, such as in our client's case, and that what the CLRA was trying to do was exclude individuals or businesses that are in the business of buying and selling cars or buying and selling products. That's a district court case. We can't follow a district court case to tell us what California law is. We're obligated, we're required to follow a Cal Act case, which Paduano is, unless we're pretty confident that the Supreme Court of California won't follow it. We can't say, well, a federal district court disagreed with Paduano, so we're not confident that the California Supreme Court will follow it, because the district court is just supposed to follow state law. What's more, the district court case, Mazda, didn't have Paduano as guidance. It had to act without it because it was decided before Paduano. Your Honor, Paduano has no bearing whatsoever on the issue that you raised and that I addressed, which was the definition of a consumer and who is standing under the CLRA. Mazda addresses that issue. Paduano is about the consumer aspect. Mazda is about the consumer, whether someone is a consumer under the CLRA and says that only dealers are excluded. Paduano has nothing to do with that, does not address that at all. Counsel, the district court denied class certification primarily because it found or concluded that individual issues would outweigh the common issues. And I'd appreciate your addressing that basis for the district court's decision, why you disagree with that. Yes, Your Honor. I think the district court did not evaluate the plaintiff's theory of recovery. Instead, the district court focused on affirmative misrepresentations or alleged affirmative misrepresentations, which have nothing to do with our theory of liability. Specifically, our case that is stated explicitly in our certification motion and the reply, of course, is that Toyota failed to disclose material information about the second-generation Prius's fuel economy and real-world driving conditions. You're ignoring the factors that the district court did consider. He considered what fuel economy each class member achieved, what factors contributed to the driver's fuel economy, such as driving habits and the like, what the purchaser's fuel economy expectations were. That's all. Why don't those predominate over an issue of whether or not there is a duty to disclose and the like? I mean, I think it's an abusive discretion standard. You can comment on that. But if it is, isn't the district court's rationale for concluding there's no class certification correct? No, Your Honor, because the court used the wrong legal standard. The court used the factors, actually, that you just listed and I think that Judge Graber was alluding to, but that's not the right legal standard. The right legal standard is set forth in this court's decision in Williams v. Gerber and also stated in this court's more recent decision in Wolin v. Jaguar Land Rover that one looks at the reasonable consumer's perspective. So you don't look at each individual putative class member and ask them, well, what was your mileage? What are your driving habits? What were you thinking? Of course, no case would be certified if that were the test. It would be impossible to certify any false advertising or deceptive advertising case. What you look at is a reasonable consumer, and that's established case law for both the UCL and the CLRI. So if the court hadn't made that legal error and looked at the predominant common question, which is did Toyota fail to disclose material information according to a reasonable consumer about the second-generation Prius's fuel economy, the case would have been certified. But even the reasonable consumer is going to consider all those things that the district judge considered. I mean, you're not suggesting that we can ignore all of those other individual factors, are you, and look only at this hypothetical reasonable consumer? Well, in a sense, I am. Those factors will be looked at, but not for each individual class member. Through the eyes of one person, of a reasonable consumer, the trier of fact will make that determination. That's the only way you can have deceptive advertising class actions. If you had to poll each putative class member, then what would be the point? Well, let me shift gears for a moment because I want to just clearly understand, in connection with the, is this solely an omissions case? Your briefs seem to say this, and particularly your reply brief, saying this is an omissions case. Do you challenge the district court's conclusions that the various representations or ads or the like did not give rise to a claim here? We do not challenge that. There are no allegations in our cert motion or in our reply that any of the affirmative representations or misrepresentations are deceptive or untrue. That is not our case. Well, this is an omissions case. Absolutely. Tell us what the authority is then under California law for the duty to disclose in this situation. Absolutely. Under Lemandry v. Judkins, which is discussed in the case of Falk v. General Motors, a test is set forth for when a company such as Toyota is obligated to disclose information. And the test is very simple. One, the information has to be material such that the buyer would have acted differently had he or she known about the information. And two, the seller, the defendant, must have either actively concealed the information or had exclusive knowledge of it. And those are our bases. And there are two other factors which aren't relevant here, fiduciary relationship and partial representations. And we're not alleging that. All right. I understand under Falk and some of the other cases that line of authority seems to exist in California. But we do have a Ninth Circuit opinion, an Osterster v. Alienware Corporation decided in April of 2009 where the court said under the Consumer Legal Remedies Act, a manufacturer's duty is limited to its warranty obligations absent either affirmative misrepresentations, you have told me there are none that remain, or a safety issue. Yes. Period. That's what they say. They cite Doherty. What do we do with that pretty clear announcement as to when you can have a fraudulent concealment claim? Yes, Your Honor. It's distinguishable on this basis. In that case, as you just read, the pertinent part of the holding when there's a warranty. And the logic is that a consumer has no expectation that a product is going to work beyond the warranty. So basically, once you're beyond the warranty, all bets are off according to that decision. Isn't that, aren't you in the same place as if there were no warranties in the first place? I mean, why is it different? Well, it's different because the issue of a warranty limits the expectation of the product working properly. Here, there is no warranty, so there is no point beyond which the consumer should have no reasonable expectation that the product is going to work. Here, there's no warranty. What there is, though, is there's a product that's being sold based on fuel economy. There's exclusive knowledge on behalf of Toyota that this car achieves disappointing gas mileage, around 40 miles per gallon. They've done internal consumer surveys, internal early buyer surveys, and all the feedback they're getting is this car underperforms and people aren't happy and it's not meeting expectations. I don't know if you've made that out. What the representation is that's the core of this lawsuit is the EPA mileage. Now, everyone knows that the EPA mileage is not the average mileage you can expect, and the sticker says so, and it says you are likely to get different mileage yourself. And the manufacturer is obligated by law to state the EPA mileage. If the manufacturer discusses mileage at all, it's a federal legal command. What's more, the EPA mileage is not meant to be an average mileage that people can expect. There are regulations, for example, at CFR 600.1108 subsection B2, and non-metropolitan driving with an average speed of 48.6 miles per hour, maximum speed of 60, the cycle is 10.2 miles long with 0.2 stop per mile, consists of warmed up vehicle with a chassis dynamometer through a specified driving cycle. Well, my guess is that not a single person in the courtroom has ever done that, and you'd get much better mileage if you did than if you drove in real life. Your Honor, let me put it this way. Let's say that Toyota's internal testing and early buyer surveys and consumer surveys revealed that people were getting five miles to the gallon, okay, five miles to the gallon, and people were complaining about it, and they got 2,600 complaints, and there was a smoking gun document at Excerptive Record 452 where a Toyota executive reports back to Tokyo and says that this is a huge problem, people are not getting what they paid for, we have an issue here. Then would you think Toyota should disclose that it only got five miles per hour? Are you saying that they should not put the EPA mileage on the sticker? Under the FTC guide, car manufacturers have explicit authority to supplement the EPA mileage with additional information. And they did. No, they did not do that. They chose not to show the truth. They decided not to disclose the truth. The evidence in the record is some people do better than the EPA, some do worse. I would expect that most do worse because they're not driving with a warmed up vehicle at 48.6 miles per hour. They conducted internal testing that showed an average of 40 miles per gallon, and that was confirmed with their early buyer surveys, where they're looking at the new buyers and seeing what kind of mileage they're getting. To me, if you get 48.6 when things are perfect, 40 sounds like what I would expect. But under real driving conditions, their tests showed and their buyers reported back to them they're getting around 40, and they chose not to tell the EPA that when asked. They chose not to tell the consumers that, even though they had the right under the FTC to supplement their EPA advertising. Counselor, you have much exceeded your time, and we have used a lot of it with questions. But I think we understand your position, and we'll hear from Toyota, and we will give you some rebuttal time since we used so much of it. Thank you. Good morning, Your Honors. May it please the Court, I am Michael Mallow on behalf of Toyota Motor Sales USA, Inc. Your Honors, I think you have touched on a number of the problems that arise in this case. Well, let me start with a question in my mind, since there are many issues here. I want you to assume for the purpose of this question that an omission could be actionable, because otherwise my question won't make any sense. But if an omission is actionable, why do any of the individual questions on which the district court relied on page, I believe it's 9 or 10, why are those relevant as individual questions when, in other words, I'm not making myself terribly clear, it appears to me that the district court was looking at affirmative misrepresentations and not omissions. And if there's an omission and a reasonable consumer standard, why do any of those questions matter? I think the questions matter, Your Honor, because what Judge Gutierrez was grappling with was the issue of materiality. And what I mean by that is the plaintiffs in this case focus at this point exclusively on a single data point, what they call the long drive test and the purported results of that test. And what Judge Gutierrez is grappling with and what the plaintiffs have focused on and what Your Honors have focused on is what is the materiality of that particular data point? Is it material when there are consumers who are in fact ‑‑ I think you've misunderstood my question. And I'm sorry, because I think I probably didn't ask it very well. I'm concerned with the issue of class certification only at this moment in my question. And the court below ruled that common questions did not predominate because all of these individual questions were relevant. And I'm asking you if there's an omission involved rather than a misrepresentation, why are these individual questions even in the case at all up until you might get to the point of, say, a questionnaire asking if you're entitled to damages? Let me address it this way, Your Honor. And I think I understand Your Honor's question. I apologize if I missed it before. With still the issues of commonality and individual issues in terms of the predominance, the omission in this case is, and putting aside whether it's actionable or not, the omission is that there was an evaluation done by Toyota that purportedly indicated that EPA estimated mileage cannot be obtained under certain very limited circumstances, very precise circumstances. Well, their basic theory, as I understand it, is Toyota knew that the mileage would be worse than the EPA estimate by a significant amount, and they didn't tell prospective consumers, period. And that a reasonable consumer, not any particular individual, but a reasonable consumer would have wanted to know that. Now, that may or may not be a winning theory, but I guess I don't understand why these purported individual questions even would come up in determining whether that's a valid theory. The reason for that, Your Honor, is the only reason that data point has any relevance or materiality is because it establishes that mileage is variable, which of course we know has been disclosed. But it establishes that mileage is variable. And what the Judge Gutierrez is looking at is if I'm dealing with a body of class, a putative class, how does that particular omission potentially impact a consumer, a reasonable consumer? And part of that is taking into account... But that's not an individual question. Well, it would be when you have to take into account the experience of consumers who drive these vehicles. But that's a generic question, a proof. It's not individual in the sense that if you can demonstrate, let's use counsel's hypothetical. If Toyota knew that people could only get five miles to the gallon and EPA said 50, it was a ten times difference, then a reasonable consumer would want to know that. Now that sort of doesn't have to do with whether they live in Fairbanks or Los Angeles or whether they drive fast or slow. A reasonable consumer would want that information. So I guess I don't really understand how individual questions on an omission theory would come into play. I'm doing, I guess, a poor job of trying to articulate that materiality, even in an omission case, is still a proper focus for the court in determining predominance issues. I'm getting lost in your answer to the question. Assuming that there can be a cause of action for omission, if Toyota states the EPA mileage, why isn't it actionably, why isn't it common to all the Prius consumers that they may think they're actually going to get the EPA mileage, so it's not enough to say actual mileage may vary. As Toyota does, Toyota has an obligation if it discloses EPA mileage to say actual mileage is likely not to be this good. Why isn't that a common question? Well, that actually is not the plaintiff's case as it's currently standing. The plaintiffs are not arguing that Toyota advertised EPA estimated fuel economy and therefore had a duty to disclose the other information. What the plaintiffs are arguing in this case is forgetting the EPA estimated mileage exists, Toyota had a duty to disclose the long drive evaluation because a reasonable consumer would have found that particular piece of information relevant. And doesn't that go to materiality? It does go to materiality, Your Honor. Doesn't materiality go to the various factors the trial judge identified as the individual factors? Absolutely, Your Honor. Now, let me ask you this. The Falk case, which is recognized with due reference as a district court decision, but I seem to like those. Dority and Bowden. And then it says when a defendant is in, well, it describes what that court concludes are the ways in which a failure to disclose can be actionable. And one of them is that when the defendant had exclusive knowledge, so that's one fact that has to be sorted out. Of material facts, so Toyota may have had some information, it may have been exclusive. Was it material? Not known to the plaintiff. Now, aren't those all factual inquiries? They are, Your Honor. And if they are factual inquiries, shouldn't the plaintiff be entitled to take that claim, that pure omissions claim, back to the trial court and attempt to establish that under California law they have a claim for a pure omission unrelated to the EPA business because Toyota had exclusive knowledge of material facts not known to the plaintiff? I'm glad you asked that question, Your Honor. Remember, this is a motion for certification. We're not necessarily on a complaint. There was evidence presented. Well, the complaint was dismissed, was it not? I mean, we have the certification was denied as to class, but the case was also dismissed, was it not? The case was dismissed after the court made the factual findings that the court made in regard to the certification motion. But let me address. So my question is, even if we agree with the district court on the certification issue, and we may or may not, but assuming we did, don't we still have to send it back on the omissions issue to sort out these facts which haven't been resolved? And, again, I'm glad you asked that because the answer is no. And here's why, Your Honor. Taking those three factors in line, was it discussed and did Toyota purportedly have exclusive knowledge of what the Prius vehicles would obtain in this supposed real-world environment? And the answer to that is, of course not. The plaintiff's own complaint says that Consumer Reports, which is a publication that is specifically targeted to consumers who are contemplating the purchase of a vehicle, especially in their automotive edition, specifically reported that in their study, in their real-world test, the Prius was getting between 42 and 44 miles to the gallon. So how is the piece of information that Toyota had, based on the circumstances of that particular long drive, exclusive to Toyota? Well, that sounds like a really good argument to make to the district court, but it wasn't made. He didn't make any findings specific to that. There never has been. He concluded that the plaintiff, Aberdeen, wasn't even a consumer, so we didn't even have to get there. Let me ask you this. Don't you concede that he was using his car 50% for business and 50% as an individual for personal use, and he's a consumer under the statute for purposes of moving the case along? Does Toyota concede that? Yes. No, Your Honor. Well, what case do you suggest? He relied on this Laszlo case, I think, where the guy rented a car for business purposes and conceded he'd done that. That doesn't give you any help, does it? It does, Your Honor, because Mr. Aberdeen in this case, in fact, conceded that very same point. Mr. Aberdeen, in deposition, actually said, and this is in the record, said that he purchased the vehicle as the replacement for his prior Ford Explorer, which was his business vehicle. And in the same deposition, he said he used it 50% for business and 50% personal. And let me finish, Your Honor. The second piece of information which Judge Gutierrez did find very significant was that Mr. Aberdeen testified that he took a full deduction for all the miles that he drove and for the cost of the vehicle. That may be a tax problem, but it doesn't make him not a consumer. If somebody used it entirely for personal purposes and pretended it was a business car, they might get in trouble with the IRS, but I'm not sure how that makes them not a consumer. Well, this is a uniquely trial issue because what Judge Gutierrez says in his order is he's got a real problem with Mr. Aberdeen's credibility on that point. There wasn't a trial yet. There was deposition testimony and there were declarations submitted to Judge Gutierrez. And the deposition testimony is ambiguous because what he said is he wrote off all his business expenses. Well, he's entitled to do that. Now, it's less clear that he wrote off the personal use expenses. We don't know that, and there's nothing in the record that says that. So I think Mr. Aberdeen is a consumer for purposes of this statute. But where does that get him? Well, that is actually would be the follow-up point. And just I would ask you, Your Honor, to go back and look at Judge Gutierrez's order on that point and the deposition testimony and on the tax deduction because he, in fact, said he took full deductions. And we have the picture of his vehicle, which has his business emblazoned on the side. And what Judge Gutierrez was saying is in a subsequent declaration, Mr. Aberdeen changed his testimony, saying, I am not using the car essentially primarily for business at this point. In the deposition, he said 50-50. I don't think that the subsequent testimony is in any way inconsistent with that position. I believe he meant under 50-50, Your Honor. As the statute is worded, that would not be sufficient for Mr. Aberdeen because it's primarily for. Isn't that a factual issue, whether someone's using it or buying it or buying it as a consumer, using it as a consumer? I mean, you might win that argument if there's a trial, but you don't win it as a matter of law, do you? I agree that is a factual issue. When Judge Gutierrez is looking at the standing issue and the typicality issue, what he says is, and to your point, what Judge Gutierrez goes, this is a, in his feeling, this is an issue that Mr. Aberdeen is going to have to deal with at trial that potentially makes him atypical because the person who buys their vehicle primarily for family and household use doesn't have to go through that evidence. This fellow had two cars, right, a personal car and a business car. I believe his testimony was that he had three cars, but yes, Your Honor. Three cars. And the Prius was the one he called his business car. Correct. And his testimony is basically, I lied to the IRS. Actually, I use it half for personal use. Is that, have I got it so far? Did he either lie to the IRS or he's lying to this court? It's one of the two. He says actually it's 50-50. And his precedent is a rental car case where a guy goes, well, like me going to Pasadena to hear cases. It's a business trip. He wouldn't be renting a car there if it wasn't a business trip. But he does some personal errands with the car as well. Was that the precedent that he cited? He cited that. Is there any other precedent that bears closely on this? There is. There's a case involving Ford Motor Company. It's not a California case, but I think it's Ohio's consumer protection statute that's worded similar to California's. It's Ford Motor Company v. Ryan, 189 Ohio App 3rd 560, 939 Northeast 2nd 89. It's a 2010 case. In that case, the court, in fact, also made the same inquiry that Judge Gutierrez did, focused in on the tax deduction that was taken in that particular situation and said you can't take the tax deduction. Are you allowed to prove that you lied to the IRS or are you stopped? I'm sorry, Your Honor? Is the plaintiff allowed to prove that he lied to the IRS and that he was really a consumer or is he stopped from proving that he lied to the IRS? I would suspect he's stopped, but in terms of class certification, that really, again, that raises an issue that wouldn't be fair. That's actually the question that I had because the issue that you've raised may potentially bear on typicality, but I have difficulty understanding how it bears on his individual claim because I think that the testimony is ambiguous as to whether the business deduction covered the 50% business use or something more. That is, I don't think it's at all clear that he's lied to anybody, but I don't understand how the 50-50 usage would bear on his individual claim. Well, in terms of his ability to have a Consumer Legal Remedies Act, it would bear on his individual claim whether he's a consumer for the purposes of the statute. I just want to understand your position. Is it your position that under California law, you cannot have a fraudulent omissions claim in the context of this case? In the context of this case, you cannot have an omission claim when the expectation of consumers, which is what creates the materiality for the omission, is based on EPA-estimated mileage. But if you look at Falk, it talks, and I'll read you just a portion. It says it's dealing with the CLRA constituting fraudulent omissions. To be actionable, the omission must be contrary to a representation. That would be your EPA business, and I think I agree with you there, but it doesn't stop. It then says, or an omission of a fact the defendant was obligated to disclose, unrelated to that representation. And the case then goes on to say that that duty to disclose can be made if, again, the defendant has exclusive knowledge of material facts not known to the plaintiff. When the defendant actually conceals a material fact or the defendant makes partial representations. Are you saying that that's not good California law anymore and that there can't be a stand-alone omissions claim that Mr. Aberdeen can bring? Well, it's the extent that the plaintiffs are urging the notion that you can have an omissions claim in a vacuum. Toyota's position is, in fact, you cannot have a pure omissions claim in a vacuum. Even Falk tethers itself to the notion of consumer expectation and materiality of the claim. And where it does that is it says, you know, it focuses on the fact that the speedometer, that there was a consumer expectation, consumer expectation that that speedometer would last the life of the vehicle. And the fact that it didn't now has some materiality. And we're talking about a safety defect, right? So there are two criteria beyond the four that Your Honor mentioned that were very significant in Falk and, in fact, have been the focus of subsequent cases. But later cases have refused to tether it to the safety issues. Isn't that true? Do you think that those omission cases are limited to safety issues? If Your Honor looks at the cases that post-date Falk where the Falk standards have been allowed, all of those cases have some aspect of affirmative representation and or are product defect. Well, Judge Ware had one involving a computer chip. I mean, there's no safety issue there. But there was an issue of whether there was a duty to disclose and whether you could make a claim for an omission. Product defect and there was still representations where the omission was contrary to something that was said by the manufacturer, some expectation that a consumer would have. And what plaintiffs are urging Your Honors to do is to say that in a vacuum with no proof of consumer expectation, this data point, this long drive evaluation would be material to a reasonable consumer. But based on what? Based on what? The plaintiffs have conceded it's not based on EPA mileage and it's not being alleged that 35 or 40 or 44 or 46 or 48 miles to the gallon is a defect and it clearly has no impact on safety. But materiality has to be tethered to something. It can't exist in a vacuum. And that's what the plaintiffs are trying to urge this Court to agree with, that it exists in a vacuum. Judge Coutier is focused on that. There can never be then a... Toyota has an internal study. Nobody knows about it but them. And it says that we can't believe what the EPA has done because they're only going to get 30 miles to the gallon. But the consumer, we know the consumer is buying Priuses because they want the higher mileage. I mean, that's just intuitively true, is it not? Higher mileage, yes. There would never be a claim that they could bring. Is that what you're telling me? Let's assume they never mentioned that the EPA put on their website what it did, but Toyota never mentioned it in their ads or anything else. But they had an internal study that said it's going to be 30 miles to the gallon. Would you be able to bring an omissions claim under California law? There would have to be more to establish that the fact that the vehicle only gets 30 miles to the gallon is material to a reasonable consumer. Isn't that factual? But as we sit here today... Let's assume. Certainly it has to be determined that the reasonable consumer would want more than 30 miles to the gallon. But isn't that a factual issue that needs to be sorted out rather than on a motion to dismiss? It's not a motion to dismiss, Your Honor. We're on a motion for certification, and I agree. It is a factual issue. The whole case was thrown out, and I assume that you do now concede that it was improper to dismiss the whole case on the basis of a denial of certification since our United Steel case. I believe, Your Honor, that it would be harmless error, and the reason for that is this. Judge Gutierrez found that Mr. Abedin lacked standing to bring any of his claims. Okay, so we do have to reach those issues. Because he was wrong to say that the case has to be thrown out because of the denial of certification. He didn't know that at the time. In fairness, he said, ah, there's no law, and now there is. So you're saying that because you are entitled to argue that he was right for a different reason, we then get into all the issues that you've been discussing with the bench. Because otherwise you're saying dismissal was proper anyway. So we're off to the races, it sounds like. Essentially dismissal was proper anyway, Your Honor, because Judge Gutierrez found that plaintiff lacked standing to bring any of the claims. Because he was not a consumer. That's only a small part of it, Your Honor. It's predominantly the affirmative representation claims that permeate the plaintiff's complaint are not actionable under Pondwano, and the omission claim is also not actionable in this case. I'm trying to sort it out because, as the Supreme Court has said now several times, people use the word standing when they don't mean standing. They mean failure to state a claim upon which relief can be granted. And I'm trying to find out what's what. And you're right, that is an issue of much discussion. If you're not a consumer, you don't have standing to bring a consumer claim. If an omission is not actionable, then it's a failure to state a claim upon which relief can be granted when you claim an omission. I think standing would also be implicated on that as well because what is the injury that is caused by the omission? Let me ask you one other little detail here. If he does not get class certification, how does he get to the jurisdictional amount necessary for diversity jurisdiction? Well, that's the CAFA issue. He does not. But you conceded that the district court would have jurisdiction even if he does not get class certification. And I was wondering why. Well, when the plaintiff brought and alleged the claim, he alleged facts that triggered CAFA jurisdiction. Oh, you mean the 17,200 section in California? No, no, the Class Action Fairness Act. He alleged the necessary diversity requirements to have jurisdiction in the federal courts. And then what happened was Judge Gutierrez found that there could be no certification. And at the time, as Judge Graber correctly noted, there was a dispute among the circuits, no Ninth Circuit guidance on the issue, and Judge Gutierrez ruled that there was no subject matter jurisdiction because CAFA no longer existed. And that was an issue that the judge raised sui sponte. That wasn't argued by the parties. Thank you, counsel. And we used a lot of extra time, so you may have five minutes. We'll give you a start on five minutes for rebuttal, and we'll see where we go from there. Thank you, Your Honor. I appreciate that. A few points that I want to make. First of all, the question was asked, you know, where does that get him? Where does that get Mr. Aberdeen in the, basically, debate you were having about the materiality of the information that wasn't disclosed? And I just wanted to emphasize, given that that question is evaluated from a reasonable consumer standpoint, and therefore it's a predominant common question, that's precisely what this case is about, and that's precisely what the finder of fact. That's a part I don't understand. I cannot imagine a reasonable consumer buying a car that's supposed to be good for the planet because it will burn less gasoline and emit less carbon without ever reading anything in any of the consumer magazines or any of the sites on the Internet with consumer information or car magazines or anything about what mileage it actually gets, or even asking a few friends what mileage they get. And he doesn't allege any of that. And what's more, he never even checked his mileage. I can't imagine that a reasonable consumer would do that, and I can't see the concealment because anybody can and many people do check Priuses and report publicly on what mileage they get. Let me address both of those issues. First of all, he does allege that he, he alleges that his dealer who sold him the car said he was going to get 60 miles per hour. He alleges that he did see advertising on CPS. Your Honor, he alleges that he saw advertising. So sue his dealer for lying to him. But that's not the entity that didn't disclose the material information, so that wouldn't be the proper defendant. Here we have Toyota. Why is Toyota's nondisclosure any different from any other individual's not disclosing his personal experience, since anybody other than Toyota can drive the car and check the mileage? Well, because they're not in the business of selling Toyotas. Toyota did not only the long drive evaluation, they also did the September 2008. But they knew that the EPA mileage was a true statement of the EPA mileage. Absolutely. And if they didn't know that the EPA mileage was way off, they could just advertise the EPA. But everybody knows the EPA mileage is way off, and it has to be because of the specs. What if their internal test showed five miles to the gallon? At what point, Judge Kleinfeld, are you going to hold Toyota responsible for disclosing their internal knowledge? At some point, I think you would. Maybe five, maybe four. The point is that is a question for the trier of fact to determine what the reasonable consumer would determine is material. When would the reasonable consumer want to know what their internal test revealed? And another important fact is Toyota knew what the expectations were. Again, look at the smoking gun document, ER452. Calling it a smoking gun doesn't make one. I walked back to court yesterday, and look at all those cars at Rusniak, the middle-aged man's fantasy car store, the Porsches and all that. And they all have these EPA stickers. And I can't imagine there's a single individual looking at those Porsches and Audis and whatnot thinking that that would be the mileage you get. Absolutely. And those cars are not being marketed based on fuel economy. The document, which I won't call a smoking gun document anymore, is a Toyota executive saying, our buyers are buying because of fuel economy. That's the number one reason. And they're sorely disappointed because their experience perfectly aligns with our internal testing. Not only the Long Drive test, but also the September 2003 fuel economy test. Two tests, same results. Buyer surveys, same results. Their expectations weren't being met. What did Toyota do? They didn't do anything. When the EPA asked Toyota, do you have any internal tests about your real-world fuel economy? Oh, no, we don't. Including Margaret Ogue, who is a director at the EPA, who herself complained about her real-world fuel economy. At some point, and that's the issue of materiality, which is the trier of fact, at some point Toyota needs to disclose this information because at some point the reasonable consumer would want to know. And that's the question. That's the predominant common question. And the answer to it is not for a class certification motion decision. One other point that I want to make about this whole issue about consumer, whether Mr. Aberdeen is a consumer. First of all, there's two statutes being invoked. The unfair competition law has no requirement the person's a consumer, period. So that goes. Now, we're only talking about the CLRA. Does Mr. Aberdeen have standing to bring a claim under the CLRA? Toyota argues that he's not a consumer under the statute. Again, there's no state appellate authority, but there's a district court opinion, MAZA, which directly addresses that issue. It says if the person's a buyer and seller of cars, they're not a consumer. But if they aren't, they are a consumer. Whether it's for quote-unquote business use or they're writing things off, they're still a consumer. They're still an individual buying one car. Then there's another decision, which is what the district court relied on, the Lazar case that has to do with the rental car, where there was no finding. The plaintiff stipulated as a matter of law he wasn't a consumer. So I don't think that's very persuasive. One other point I want to make, that if there is a huge problem with Mr. Aberdeen being a consumer, if this court decides that Mr. Aberdeen is not a consumer for the purposes of the CLRA claim, we would ask for leave to amend to add someone who is a consumer. That's the appropriate thing to do. We can't ruin everything for the entire class just because Mr. Aberdeen is not a consumer. We can substitute in a new person. But he is standing under the UCL regardless. He's the only named plaintiff so far, right? Correct. Correct, Your Honor. Are there other plaintiffs in line? We attempted to amend the complaint and add a second plaintiff, and Toyota opposed that amendment. In their opposition, which is in the record, they said there's no need for this, and if it's a problem in the future that Mr. Aberdeen isn't considered a consumer, they can substitute someone else in. In their opposition, they raised that as a possibility in the future. We're going to take them up on that offer if this court decides that Mr. Aberdeen is not a consumer for purposes of the CLRA. That's all I have to say. Thank you, counsel. Thank you. We appreciate very much this interesting argument. Both counsel have done a very good job, and the case is submitted. Our final case on this morning's docket is CB v. Garden Grove Unified School District.
judges: Zilly, Kleinfeld, Graber